DALLAS BACHE *et al.. v.* NASHVILLE HORTICULTURAL. SOCIETY *et. al.*

1. CORPORATIONS. *Service of process.* Stockholders are distinct parties from the corporation, and service of process on them does not make the corporation a party.

2. SAME. *Non-user of franchise.* The non-user of its franchises by a corporation will not alone work a dissolution or affect the title and right of its property.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

DEMOSS & MALONE for complainant.

Bache v. Nashville Horticultural Society.

N. D. MALONE and EAST & FOGG for defendants.

T. M. JONES, Sp. J., delivered the opinion of the court.

On the 13th of January, 1847, D. T. McGavock conveyed to the Nashville Horticultural Society, a corporation chartered by the General Assembly of the State of Tennessee, and having its location in Davidson county, Tennessee, a tract of about eleven acres of land lying near Nashville, "to the end that a garden may be established thereon by said Society for the purpose of promoting horticulture and establishing a promenade for the members thereof, and such other persons as they may, under their regulations admit, and to become the absolute property of said Society if they keep thereon a garden for the term of twenty years, and to revert to said McGavock and his heirs if said garden be not kept up for said space of time."

In the *habendum* clause of the deed it is further provided, "that the said D. T. McGavock, in case of a reverter, should pay to the Society the reasonable value of all houses which the Society might erect and leave on the land, and in case of a reverter within twenty years, he was to pay back, without interest, the purchase money paid him."

The Company or Society went into possession of the land under the deed, erected buildings, green-houses, and so far as appears, carried out the object for which the land had been conveyed to it.

On the 18th of October, 1850, the Society demised the premises for sixteen years and six months to W.

Pritchard, who covenanted to keep the garden as pro-
vided in McGavock's deed, and the Society agreed with
"Pritchard, his representatives and assigns, that so soon
as he or they (the stockholders), shall obtain from
the said David T. McGavock, the release or surren-
der of his right of reversion in and to said parcel of
ground, etc., by virtue of the covenants, etc., and shall
procure by purchase or otherwise, from the holders of
the capital stock of said Society, an assignment of
their respective shares of said stock, to make a deed
to Pritchard of all of the Society's interest." Pritchard
further agreed to pay to the stockholders, upon their
stock, three per cent dividend, per annum.

On the 23d of June, 1858, Pritchard conveyed his
interest, under this lease, to one Raworth, who, on the
19th of February, 1866, sold his interest to defendant,
Laitenberger, with twenty shares of stock.

In 1866 McGavock died intestate. On the 25th of
July, 1872, complainants, as his heirs, file this bill.

The principal allegations of the bill were, that the
stockholders were men of respectability and prominence,
that the main inducement moving McGavock to make
the conveyance was to increase the value of other lands
owned by him contiguous to this tract, and which he
had before that time caused to be laid off into lots.

That the Society took possession of the gound "and
did establish a garden," and erect suitable houses and
kept the same up as a garden and promenade "for
the stockholders and their families and other respecta-
ble citizens." That afterwards the Society became finan-
cially embarrassed, and instead of keeping up the garden

as contemplated, on the 18th of October, 1850, leased the land to W. 'Pritchard for the term of sixteen years and six months, that is, for the balance of the unexpired term of twenty years—that by the lease Pritchard was to pay the debts of the Society, and to pay the stockholders three per cent dividend per annum on the capital stock, and Pritchard further cov-- enanted to keep up the garden and promenade as: contemplated in McGavock's deed—that the Society agreed with Pritchard " that so soon as he or they (the stockholders), shall obtain from McGavock a release or surrender of his right of reversion, and shall procure an assignment of the stock, the Society will make a deed of the same to Pritchard.

The bill further charges that Prichard, on the 23d day of June, 1858, sold and conveyed his interest to Raworth, together with thirteen shares of stock, and on the 19th of February, 1866, Raworth sold his interest to defendant, Laitenberger.

The bill charges that neither of said lessees paid the three per cent dividends to the stockholders, and that shortly after the lease to Pritchard, the main purposes for which the conveyance by McGavock was made, were gradually lost sight of, eventually and for *several years* before the expiration of the twenty years mentioned in said conveyance, the garden was turned into a market garden, and the garden house into a dance house and place for the sale of lager heer, wines and other liquors. "It was also used for less reputable purposes." That the corporation, about the year 1860 or 1861, failed to elect officers or keep up

the organization, that the stock is owned principally by defendants, Cheatham and Laitenberger.

That it was necessary to come into equity to have an account of the value of the buildings, and because it was uncertain to whom their value should be paid. The delay in bringing suit is explained by three of complainants being residents of Texas, and five of them minors.

The complainants claim that the land reverted to them on the 13th of January, 1867, when the twenty years mentioned in the deed expired, and that they are entitled to the possession of said land. That defendant, Laitenberger, who is in possession of the land is a mere trespasser—having gone into possession under the lease to Pritchard, which has expired.

The Nashville Horticultural Society, F. Laitenberger and F. R. Cheatham are made parties defendants.

Process was served on Laitenberger and Cheatham individually, and the deputy sheriff further returns, "there being no officer representing the Nashville Horticultural Society to be found in my county, I executed same on said Laitenberger and said Cheatham, representing the two main stockholders in said Society, October 2, 1872."

On the 3d of February, 1873, the bill was taken for confessed at the rules as to all of the defendants. At the next ensuing term of the court, and on the 25th of June, 1873, a decree was rendered, declaring that the land had reverted to complainants—that they were entitled to possession, and ordering a writ of possession to issue, but charging the land with the

purchase money and the value of the houses on the
13th of January, 1867, less a reasonable rent from
that date, and making a reference to the clerk and
master to ascertain the value of the houses and the
stockholders to whom it should be paid and the value
of the rents. A writ of possession was issued and
defendant Laitenberger, in consideration of being per-
mitted to remain in possession of the horticultural
garden, agreed to occupy the same as the tenant of
complainants and deliver possession in thirty days from
October 13th, 1873.

On the 3d of November, 1873, Laitenberger applied
to have the decree set aside, and for permission to
make defense supporting his motion with his own and
other affidavits. On the 30th of June, 1874, the mo-
tion was granted, and on the same day Laitenberger
filed his answer. In the meantime, complainants pro-
ceeded at law on the written agreement of Laitenber-
ger aforesaid, to regain possession. When, on the 11th
of December, 1874, Laitenberger filed a cross-bill in
the case and enjoined the further prosecution of the
action at law. Complainants answered the cross-bill,
proof was taken on both the original and cross-bill,
and the causes were heard on the 22d of December,
1877, when the original bill was dismissed, and the
agreement to attorn was declared void, and thereupon
complainants appealed to the Supreme Court. The
chancellor was of opinion that the agreement to attorn
was void because based upon a mistake of fact, the
writ in the hands of the officer being *functus officio,*
the return day having passed, while Laitenberger be-
lieved a valid writ was in his possession.

This case was heard at the last term of this court, when the court held that the decree rendered the 25th of June, 1873, was such a final decree, as placed it out of the power of the chancellor to set it aside at a subsequent term. A petition for a rehearing was filed and granted, and the cause again comes before us.

In the view which we have taken of this cause, we deem it unnecessary to decide the question whether the chancellor, under the provisions of the Code, sec. 4375, had the power, at a subsequent term of the court to set aside the decree rendered on the 25th of June, 1873. The appeal of complainants having brought the whole case before us, we are of the opinion that this decree is void, because the *pro confesso* had been taken against the Nashville Horticultural Society, which had not been served with process and was not before the court. Service of process upon two of the stockholders is not a compliance with the provisions of the Code which requires the process to be served "on the president or other 'head of a corporation, or in his absence on the cashier, treasurer or secretary, or in the absence of such officers, or any directors of such corporation, and if neither the president, secretary or treasurer reside in the State, service on the agent shall be deemed sufficient": See Code, secs. 2831, 2832.

But it is insisted that the Nashville Horticultural Society is an extinct and defunct corporation, and for that reason a service upon two of the Stockholders is sufficient, as it had no officer or agent upon whom process could be served.

The bill charges that the corporation had not kept

up its organization, and had not elected any officers or directors since 1860 or 1861.

The Code provides that "the failure to elect officers at the proper time, does not dissolve the corporation, but those in office hold until the election or appointment and qualification of their successors": See Code, sec. 1481. "A corporation is not dissolved by the *non-user* or assignment of its franchises, in whole or in part, of its powers, franchises and privileges, unless all the corporation property has been appropriated to the payment of its debts": See Code, sec. 3431.

Stockholders are distinct parties from the corporation in which they are stockholders, and legal proceedings against them cannot reach it: *Lillard* v. *Porter*, 2 Head, 178.

In a recent decision of the Supreme Court of Tennessee, after the question was fully and carefully examined, the court held the "non-user of its franchise by a corporation, will not alone work a dissolution or affect the title and right to its property": See *Maysville College* v. *Bartlett*, 8 Baxt., 235.

The title to the land conveyed by the deed of D. T. McGavock, was in the Nashville Horticultural Society, yet the decree which was rendered on the 25th of June, 1873, declared this title to have reverted to complainants, thereby declaring the land had been forfeited by a failure to comply with the conditions of the deed, and divesting the title out of the Nashville Horticultural Society, although it had not been served with process and was not before the court. We think this was error. The appeal of complainants has brought

before us the whole case, and for the reasons above stated, even if the chancellor had no power to set aside the decree rendered on the 25th of June, 1873, that it is our duty 'to reverse it, and remand the cause to the Chancery Court of Davidson county, that the proper proceedings may be had to bring the Nashville Horticultural Society before the court.

The decree of this court, entered at its last term, will be set aside, also the decree of the chancery court of June 25, 1873. The decree of the chancellor dismissing the bill will be reversed, and the cause remanded to the Chancery Court of Davidson county, for the purpose above stated, and the complainants will pay the costs of this court.